UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                                       CRIMINAL ACTION NO. 3:11CR-105-S

STACY ALLEN TAYLOR                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter came before the court on motion of counsel, made on behalf of the defendant, seeking a competency evaluation of the defendant, Stacy Allen Taylor, regarding his competency to stand trial. DN 39.

A superseding indictment was returned against Taylor on September 21, 2011 charging him with various offense stemming from his purported conduct of an internet pharmaceutical business, including introduction of misbranded drugs into interstate commerce, unlawful distribution and dispensing of controlled substances, mail fraud, wire fraud, money laundering, and various conspiracy counts. (DN 7).

Taylor has been evaluated by two mental health professionals. He was first evaluated at the Federal Medical Center in Lexington, Kentucky by Dr. Judith Elizabeth Campbell Ph.D. He was then evaluated at the request of defense counsel by Dr. Eric Y. Drogin, J.D., Ph.D. Dr. Campbell found Taylor competent, and Dr. Drogin found him incompetent to stand trial. Both experts

provided compelling testimony at the competency hearing[1] concerning their impressions of Taylor's psychiatric condition.

The experts conducted different diagnostic tests. However, they agreed that Taylor was not a malingerer, nor did they find him to be psychotic. They both found that he was alert and oriented, animated, and able to understand the charges filed against him. They also agreed that he had a grasp of the legal process through which those charges were filed and the manner in which the case would proceed. He understood the role of counsel and the potential outcomes which might result from the disposition of the charges.

The experts were both familiar with the writings that Taylor has been persistently filing with the court and mailing to the prosecutor in which he talks about, among other things, his connections to congressmen, ambassadors, WikiLeakers, agents in China, tortures in China, Ambassador Stevens' death in Benghazi, Julian Assange, Edward Snowden, and billions of dollars secreted away in an account to which he has access. The experts agreed that Taylor feels it imperative to tell his story, and frequently digresses into explanations of matters which have been variously described as "grandiose" and "fantastical." However, the experts parted ways in their conclusion whether Taylor's persistent focus on matters of international intrigue prevent him from rationally assisting counsel in defending against the charges herein.

The experts agreed that Taylor is completely distrustful of his attorney and believes that his attorney is working against him. Taylor also made it clear to the court that he does not believe himself to be incompetent. He wants to proceed to trial, and stated in court, "I can assist an attorney I can communicate with." (TR 115). He believes that he has "fired" current counsel.

---

[1] The court conducted a competency hearing on September 10, 2013 at which time the psychiatrists and Taylor gave testimony. A transcript of the proceedings (referred to hereinafter as "TR") can be found in the record at DN 71.

Dr. Drogin diagnosed Taylor with Delusional Disorder, finding that certain of his delusions, such as his assertions that he has been granted immunity by "the United States ambassador to the United States" (TR 55), that his current attorney is being controlled by the government and is hiding evidence (TR 56), and that Julian Assange is going to hire him a new attorney (TR 56), directly impact Taylor's ability to cooperate with current counsel. Dr. Drogin indicated that Taylor's view of his current legal situation is colored by his belief that he will "walk away" from the charge under a grant of immunity, and his paranoia that his attorney was working against him.

Thus, Dr. Drogin believes that there is a certain functional aspect which must be considered when addressing the impact of Taylor's "delusions." The court asked Dr. Drogin whether he believed that Taylor would be unable to assist *any* attorney in his defense. Dr. Drogin responded that he did not know the answer to that question. (TR 60).

Dr. Drogin identified a "standard of consultation with one's attorney which goes beyond the provision of information." He stated that a defendant "need[s] to be in a position to convey what [he] believe[s] the facts are, but also receive guidance from counsel and make sense of that guidance and comply where relevant." (TR 61). "There has to be some level of trust." (TR 61). Dr. Drogin found that Taylor was not able to rationally assist in his own defense under this standard.

Dr. Campbell offered a different view of Taylor. She gave Taylor an Axis II diagnosis of antisocial personality disorder, histrionic personality, paranoid personality disorder, and narcicisstic personality disorder. She distinguished her diagnosis from that of Dr. Drogin on the basis that although such personality disorders can cause impairment in functioning, they usually do not acutely impair an individual's perception of reality. (TR 76).

Dr. Campell testified that her interaction with Taylor on the psychiatric unit at FMC - Lexington supported her diagnosis. She found that, with urging from her, Taylor was able to set his other issues aside and focus on the current charges. (TR 76-77). While she found that he had a clear distrust for his current attorney, Taylor expressed a willingness to assist an attorney he did trust. She found that he could talk realistically and rationally about the charges against him. (TR 77). She testified that Taylor provided some background relating to the present charges. He stated that he did not profit from the online pharmaceutical business at issue in the indictment. He also stated that he had seen discovery materials and felt that the United States could not prove their case against him. (TR 78).

Dr. Campbell concluded that rather than rendering him incompetent to stand trial, Taylor's personality disorders "may discourage [him] from readily complying with or conceding to the advice of his attorney, but they do not significantly distort his perception of reality in a manner suggestive of severe mental illness and they do not prevent him from engaging rationally and productively with his legal counsel should he choose to do so." (TR 90). She explained that generally, personality disorders are "volitional;" that is, such individuals are able to "rein it in when they know they need to or they're invested in doing so" (TR 96), and that Taylor was able to accomplish such focus in discussions with her.

Title 18 U.S.C. § 4241(d) provides that if, after a competency hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court must find him incompetent to stand trial and commit him for treatment.

The United States Supreme Court has articulated the test for competency as whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960).

In determining Taylor's competency, the court has considered all the testimony adduced at the competency hearing, including the testimony of Taylor himself. The court had the opportunity to observe Taylor's demeanor, and engage him in a dialogue concerning his ability to assist counsel in his own defense.

In that regard, the court observed that Taylor appeared to understand that his competency was being assessed by psychiatrists, counsel and the court. He was able to appropriately address the court and express his dissatisfaction with the fact that, in his view, his counsel would not listen to information which he believed to be important to his case. Although Taylor veered off topic, the court redirected him to the subject of his ability to assist counsel with his defense. The court repeatedly inquired how Taylor would assist his attorney. Taylor's consistent and pointed response was that he "can assist an attorney I can communicate with." (TR. 115). Concerning present counsel in particular, Taylor stated, "I can't communicate with Larry Simon...anything I say, I seem – I feel like I'm saying something wrong. When he's my attorney, I want to understand what I'm saying wrong...I can work with an attorney...-- I cannot communicate with a person that I can't trust, and I mean, this is my life." (TR 115).

Dr. Campbell testified that Taylor was able to focus on the present charges and offer an apparently realistic view of his circumstances. In the context of the competency hearing, defense counsel properly sought to prevent Taylor from straying into any specifics concerning the charges

against him. Therefore, Taylor provided no explanation during the competency hearing concerning a defense of the case. The court is thus unable to assess from the defendant's testimony whether he is, in fact, capable of approaching the defense of his case in rational terms as suggested by Dr. Campbell or whether delusional thinking will prevent him from doing so. We note that Taylor need not be in complete agreement with his attorney concerning a defense strategy. The law requires only that he have the present ability to rationally consult with counsel in the process. It is difficult to predict, however, whether Taylor will, in fact, focus on the charges against him and assist counsel in a rational manner in formulating a defense strategy.

In the final analysis, the court cannot find by a preponderance of the evidence on the present record that Taylor is suffering from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. The court is mindful of the breakdown in communication with his present attorney and Taylor's evident distrust of him. The court is also acutely aware that Taylor prefers to discuss matters of international intrigue. However, the court does not find that these issues necessarily translate into incompetence under § 4241(d). Taylor has expressed that he will be able to assist new counsel. He wishes to proceed to disposition of the charges. In light of the findings herein and the court's objective that the matter remain on track toward disposition, present counsel will therefore be relieved in the case and new counsel will be appointed.

The court presently finds that Stacy Allen Taylor is competent to stand to trial, and the matter will proceed accordingly.

Therefore, **IT IS HEREBY ORDERED AND ADJUDGED** that Larry D. Simon is hereby **RELIEVED AS COUNSEL** for the defendant, Stacy Allen Taylor.

It appearing that there is no change in the financial circumstances impacting the previous finding of indigence, **IT IS FURTHER ORDERED** that the Clerk of Court shall appoint new counsel for Mr. Taylor from the list of attorneys qualified for CJA appointment in this district.

**IT IS SO ORDERED.**

November 12, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**